## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **WILLIAM HENRY STARRETT, JR.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:18-CV-0191-L** |
| | § | |
| **THE CITY OF RICHARDSON,** | § | |
| **Defendant.** | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Order of Reference* filed March 1, 2018 (doc. 10), this *pro se* case has been referred for full case management. Before the Court for recommendation is *Defendant City of Richardson, Texas' Motion to Dismiss for Improper Service of Process and Failure to State a Claim or Alternatively a Motion to Quash Service and Brief in Support*, filed February 16, 2018 (doc. 7). Based on the relevant filings and applicable law, the motion should be **GRANTED**, and the plaintiff's remaining claims should be dismissed *sua sponte*.

## I.  BACKGROUND

On January 25, 2018, William Henry Starrett, Jr., (Plaintiff) filed this *pro se* lawsuit against the City of Richardson (Defendant) asserting claims under 42 U.S.C. §§§ 1983, 1985, and 14141, and "under [the] law of agency or the [d]octrines of *[r]espondeat [s]uperior* or [c]ommand [r]esponsibility each where so applicable" for violations of the Fifth and Fourteenth Amendments of the United States Constitution, as well as state law claims for violations of sections 24 and 30 of Article 1 of the Texas Constitution, libel and defamation, negligence, negligent employment practices, and negligent infliction of emotional distress.  (doc. 3 at 1-2, 10-17 (italics added).)[1]  He

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

"brings his action to obtain relief from the negligent and wrongful acts and omissions of Richardson Police Department [(RPD)] acting as civil authority under Defendant." (*Id*. at 2.) He seeks declaratory and injunctive relief, "compensatory, assumed, statutory, and punitive damages, including trebling to be proven," and "reasonable attorney's fees, costs, and other expenses as permitted by 42 U.S.C. § 1988." (*Id*. at 2, 17-18.)

Plaintiff alleges that on November 8, 2015, he became aware "that he had been remotely involved in training, operations, research, and development employing technologies that combine tracking, surveillance, communications, and weapons systems without his knowledge or consent." (*Id*. at 4.) "[T]hese systems and software offer capability for remotely interacting with or maintaining communications with a human subject . . . ." (*Id*.) He alleges that his remote involvement continues to this day. (*Id*. at 7.) Before he could "fully articulate details relating to these conditions and conduct . . . a family member contacted [RPD] and officers were dispatched to [his] home." (*Id*. at 4-5.)[2] When RPD officers visited Plaintiff's home, he explained that he was suffering electronic harassment and stated that "individuals remotely identified themselves and their involvement in the 'Jade Helm' exercises," and an officer then "said something very near to: 'we [are not] a part of that but if you need help, let us know.'" (*Id*. at 5.)

In August 2016, Plaintiff provided a 31-page report that "documented the ongoing harassment and business services theft" to RPD "investigation team members by electronic mail." (*Id*.) It "described the conduct and conditions that Plaintiff had been required to endure" and included information such as operation names, names of individuals, and a vehicle description with

---

[2] Although unclear from his complaint, it appears that RPD was contacted twice and dispatched officers to Plaintiff's home on both occasions. (doc. 3 at 3-5.)

the license plate number. (*Id*.) He subsequently received an email from an RPD staff member informing him that he was working on the investigation and wanted to meet. (*Id*. at 6.) Plaintiff informed the staff member that he could not answer questions in person or by phone, but "was available upon request for written comment." (*Id*.) Plaintiff routinely followed up "[o]ver the following days, weeks, then months" but received no further response. (*Id*.) He claims he has notified the RPD of the "ongoing crimes involving military" a number of times between 2015 and 2017. (*Id*.)

On September 12, 2017, Plaintiff submitted an "Open Records Request" to RPD and received only two incident reports detailing the phone calls from his family member and subsequent police visits in November 2015. (*Id*. at 3-4, 7.)[3] Plaintiff alleges that each call to RPD "was incorrectly recorded as if health problems were the primary factor in the need for a report," and the first call report did not include his explanations and statements to officers regarding the electronic harassment against him. (*Id*. at 5.)[4] According to the call logs, "both call histories were immediately closed and . . . it seems that no further investigation has taken place in any way." (*Id*.) It was only through the information received from his request that he discovered:

> 1) how these error-filled call histories are being negligently maintained; 2) that an investigation into the electronic harassment brought by military exercises as reported at the time and months after was not conducted; and 3) how these factually incorrect and obviously damaging assumptions related to characterizations of any health diagnosis, where there are none, have apparently impeded vital further investigation by [RPD] and other civilian authorities after Plaintiff's many subsequent comprehensive attempts to report, by postal and electronic mail, conditions and conduct remotely involving his person and property against his consent.

---

[3] Plaintiff appears to have received the information from his open records request on October 18, 2017. (doc. 3 at 3.)

[4] Plaintiff notes that the second call log included information not contained in the first call log. (doc. 3 at 5.)

(*Id*. at 3-4.)  On January 5, 2018, Plaintiff received notice from the RPD regarding a report made by him on November 16, 2017, that was "also logged with critical inaccuracies . . . and contained no reassurances of an investigation, questions, or requests for clarification." (*Id*. at 7.)  He alleges that these "records are presumably to also be maintained and either have been or will be negligently acted upon." (*Id*.)

Plaintiff asserts that the lack of assistance from the RPD led him to contact "the Texas Military Department, Lockheed Martin Corporation, and the United States Department of Defense . . . ." (*Id*.)  The Office of the Inspector General for the defense department allegedly admitted knowledge and awareness of the past and ongoing conduct involving Plaintiff, and affirmed that it was not going to investigate the issue, "effectively deferr[ing] any investigation . . . back to [the] local city and state police. (*Id*. at 7-8.)

On April 7, 2017, Plaintiff filed a lawsuit against multiple defendants, including the Lockheed Martin Corporation and various departments of the United States government, alleging "73 distinct causes of action based on allegations that [the defendants] conspired to forcefully use him as a test subject for military exercises and mind experiments." *Starrett v. Lockheed Martin Corp.*, No. 3:17-CV-00988-D-BT, 2018 WL 1399177, at *1 (N.D. Tex. Mar. 9, 2018), *adopted by*, 2018 WL 1383398 (N.D. Tex. Mar. 19, 2018).  He hoped to "end this protracted ordeal and initiate recovery from injury and loss." (doc. 3 at 8.)  Plaintiff's claims in that action were eventually dismissed without prejudice, and his appeal from that decision remains pending. *See Starrett v. Lockheed Martin Corp.*, No. 3:17-CV-00988-D, 2018 WL 1383398, at *1 (N.D. Tex. Mar. 19, 2018).

Plaintiff alleges that the violations of law against him "have been (and continue to be)

4

remotely perpetrated against [him] while he is at home and out on errands," and "[a]s a direct and proximate result of the conditions, conduct, and correlative crimes that have gone without investigation, corrective action, and due process of law by civil and military authority, [he] has and continues to endure pain, suffering, injury, risk, and monumental personal and professional loss." (doc. 3 at 8-9.)

On February 16, 2018, Defendant filed its motion seeking to dismiss Plaintiff's claims for improper service of process and failure to state a claim, or alternatively, to quash service. (doc. 7.) Plaintiff filed his response on February 20, 2018. (doc. 9.) The motion is now ripe for recommendation.

## II. RULE 12(b)(5)[5]

Defendant moves to dismiss under Rule 12(b)(5) on grounds that Plaintiff "served his summons on 'City of Richardson'" and failed to properly prove service by properly signed affidavit, and the record does not "reflect that the person who sign[ed] the receipt of delivery is the addressee or an agent otherwise capable of receiving service." (doc. 7 at 1-2.)

Rule 12(b)(5) permits a challenge to the method of service attempted by the plaintiff, or to the lack of delivery of the summons and complaint. *See* Fed. R. Civ. P. 12(b)(5); *Coleman*, 969 F. Supp. 2d at 745. Unless the defendant has been served with process in accordance with Fed. R. Civ. P. 4, a federal court lacks personal jurisdiction over the defendant. *Omni Capital Intern., Ltd. v.*

---

[5] Although Defendant also states that it moves to dismiss under Rule 12(b)(4) for insufficient process, its arguments relate only to Plaintiff's method of service. (*See* doc. 7 at 1-2 (stating that Plaintiff failed to properly serve Defendant).) Only its Rule 12(b)(5) arguments are therefore addressed. *See Coleman v. Bank of New York Mellon*, 969 F. Supp. 2d 736, 744–45 (N.D. Tex. 2013) (stating that Rule 12(b)(4) challenges insufficient process, and Rule 12(b)(5) challenges the method of service); *Margetis v. Ray*, No. 3:08-CV-958-L, 2009 WL 464962, at *4 (N.D. Tex. Feb. 25, 2009) (quoting Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 1353 (3d ed. 2004)) ("'An objection under Rule 12(b)(4) concerns the form of process rather than the manner or method of its service.'").

*Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); *Pavlov v. Parsons*, 574 F. Supp. 393, 399 (S.D. Tex. 1983). The plaintiff has the burden to ensure that the defendants are properly served with a summons and a copy of the complaint. Fed. R. Civ. P. 4(c)(1); *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992). "[A] plaintiff's *pro se* status does not excuse any failure to properly effect service of process." *Webb v. Dallas Area Rapid Transit*, No. 3:17-CV-878-M-BN, 2017 WL 4082445, at *2 (N.D. Tex. Aug. 22, 2017), *adopted by*, 2017 WL 4023100 (N.D. Tex. Sept. 13, 2017) (citing *Sys. Signs Supplies v. U.S. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990)).

Under the Federal Rules of Civil Procedure, a state or local government is properly served by either "delivering a copy of the summons and of the complaint to its chief executive officer," or by "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Under Texas law, any person authorized by Rule 103[6] may serve process by "mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto." Tex. R. Civ. P. 106(a)(2). The return receipt must be signed by the addressee for service to be effective. Tex. R. Civ. P. 107(c); *Ayika v. Sutton*, 378 F. App'x 432, 434 (5th Cir. 2010) (per curiam); *Keeton v. Carrasco*, 53 S.W.3d 13, 19 (Tex. App.—San Antonio 2001, pet. denied). Proof of service must be made to the court by the server's affidavit, unless service is made "by a United States marshal or deputy marshal." Fed. R. Civ. P. 4(l)(1); *Webb*, 2017 WL 4082445, at *2.

Here, Plaintiff addressed the summons to the "City of Richardson." (doc. 5.) He attempted

---

[6] In Texas, process "may be served anywhere by (1) any sheriff or constable or other person authorized by law, (2) any person authorized by law or by written order of the court who is not less than eighteen years of age, or (3) any person certified under order of the Supreme Court." Tex. R. Civ. P. 103.

to effect service via certified mail pursuant to Fed. R. Civ. P. 4(e)(1) and Tex. R. Civ. P. 106(a)(2). (*See* docs. 6 at 2, 4-5.) The copy of the signed return does not show that it was signed by either the addressee or the addressee's agent, since neither option was selected and the signature is illegible. (*Id*. at 5.) Plaintiff's attempted service was therefore insufficient. *See* Fed. R. Civ. P. 4(e)(1); *Ayika*, 378 F. App'x at 434 (finding that the plaintiff's "attempted service was insufficient under Rule 4" because the defendants' "signatures [did] not appear on the return receipts" as required by Tex.R. Civ. P. 107).

Additionally, the document Plaintiff filed for proof of service is not labeled as an affidavit and does not function as an affidavit because "it was not sworn or 'made under oath before an authorized officer,'" and it "does not qualify as an unsworn declaration because it does not state that it was signed 'under penalty of perjury that the foregoing is true and correct.'" *Webb*, 2017 WL 4082445, at *2 (quoting *Cole v. Shinseki*, No. 12-2969-STA-tmp, 2013 WL 2289257, at *3 (W.D. Tenn. May 23, 2013)). The proof of service is also signed by Plaintiff, rather than the "'individual who served [D]efendant personally . . . .'" *Id*. (quoting *Danielson v. Human*, No. 3:12-CV-00840-FDW-DSC, 2014 WL 1765168, at *3 (W.D. N.C. May 2, 2014)). His proof of service is therefore not proper under Federal Rule of Civil Procedure 4(l)(1) "because it was not made 'by the server's affidavit.'" *Id*. (citing Rule 4(l)(1) and cases) (finding that proof of service was not proper because the plaintiff failed to comply with Rule 4(l)(1)); *see* Fed. R. Civ. P. 4(l)(1).

Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). When the 90–day deadline has not expired, the court may dismiss the action without prejudice for insufficient service of process so the

plaintiff may effect proper service. *See Grant–Brooks v. Nationscredit Home Equity Servs. Corp.*, No. 3:01–CV–2327, 2002 WL 424566, at *5 (N.D. Tex. Mar. 15, 2002) (under prior version of Rule 4(m)). Alternatively, the court has discretion to quash service and give the plaintiff an additional opportunity to properly effect service. *Chapman*, 2011 WL 2078641, at *1; *Shabazz v. Serv. Emps. Int'l Union*, No. 3:04–CV–229–M, 2004 WL 1585808, at *2 (N.D. Tex. July 13, 2004) (citation omitted). "[W]hen the time to effect service has expired," however, "the party attempting service has the burden of demonstrating 'good cause' for failure to serve the opposing party." *Kreimerman v. Casa Veerkamp*, 22 F.3d 634, 645 (5th Cir. 1994) (citation omitted); *Craddock v. Halverson*, No. 7:04–CV–020–R, 2004 WL 2381715, at *1 (N.D. Tex. Oct. 22, 2004); *see also* Fed. R. Civ. P. 4(m).

Here, the 90–day deadline for serving process has expired. Consequently, Plaintiff must demonstrate "good cause" for his failure to properly serve process on Defendant. *See Kreimerman*, 22 F.3d at 645. He responds only by stating that "service of process was sufficiently proper and valid." (doc. 9 at 2.) He has not attempted to demonstrate good cause for his failure to effect proper service on Defendant, nor has he requested additional time to properly serve Defendant. Dismissal without prejudice under Fed. R. Civ. P. 12(b)(5) is therefore proper. *See Craddock*, 2004 WL 2381715, at *4; *see also Flores v. Koster*, No. 3:11-CV-0726-M-BH, 2013 WL 4874115, at *3 (N.D. Tex. June 28, 2013) (dismissing suit under Rule 12(b)(5) for insufficient service because the plaintiffs "have not attempted to demonstrate good cause for their failure to effect proper service on [d]efendant"); *Gilliam v. Kiere*, No. 3:96-CV-0813-G, 1997 WL 279768, at *4 (N.D. Tex. May 16, 1997) (dismissing suit without prejudice under Rule 12(b)(5) because the plaintiff "has not shown such good cause, or even attempted to do so"). Because dismissal under Rule 12(b)(5) is without prejudice, Defendant's Rule 12(b)(6) arguments for dismissal will also be considered. *See*

8

*Coleman*, 969 F. Supp. 2d at 746-54 (considering arguments for dismissal under Rule 12(b)(6) even though dismissal under Rule 12(b)(5) was proper).

### III. RULE 12(b)(6)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196.

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."

*Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

## A.    <u>Collateral Estoppel</u>[7]

Defendant asserts that based on Plaintiff's prior lawsuit, it is entitled to dismissal on the basis of collateral estoppel.  (doc. 7 at 6.)

Collateral estoppel, or issue preclusion, is a preclusive doctrine of res judicata.  *See Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466 (5th Cir. 2013) (stating that the "rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"). The preclusive doctrines of res judicata are affirmative defenses that generally "should not be raised as part of a 12(b)(6) motion, but should instead be addressed at summary judgment or at trial." *American Realty Trust, Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 664 n.1 (5th Cir. 2004) (citing *Moch v. East Baton Rouge Parish School Bd.*, 548 F.2d 594, 596 n.3 (5th Cir. 1977)) ("Generally, a party cannot base a 12(b)(6) motion on res

---

[7] Because collateral estoppel is an absolute bar to a party's claims, this affirmative defense is considered first.

judicata."). Nevertheless, "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) (per curiam) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortgage Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)). As with all affirmative defenses, the burden of proving issue preclusion "rests on the party claiming the benefit of the doctrine." *Patterson v. Dean Morris, L.L.P.*, No. 08-5014, 2011 WL 1791235, at *6 (E.D. La. May 6, 2011) (citation omitted); *accord Taylor*, 553 U.S. at 907.

Collateral estoppel "is limited to matters distinctly put in issue, litigated, and determined in the former action." *Next Level Commc'ns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 250 (5th Cir. 1999) (citation omitted). This doctrine has three elements: (1) the issue at stake is identical to the one involved in the prior action; (2) the issue was actually litigated in that action; and (3) the determination of the issue was a critical and necessary part of that judgment. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009) (citation omitted). Notably, "[i]ssue preclusion may apply even if the claims and the subject matter of the suits differ." *Wright v. Fed. Nat. Mortgage Ass'n*, No. CIV.A. H–12–288, 2012 WL 1190819, at *1 (S.D. Tex. Apr. 9, 2012) (citing *Next Level Commc's*, 179 F.3d at 250). Moreover, the "parties to the suits need not be completely identical, so long as the party against whom [collateral] estoppel applies had the full and fair opportunity to litigate the issue in the previous lawsuit." *Rabo Agrifinance*, 583 F.3d at 353 (citation omitted); *Vines v. Univ. of Louisiana at Monroe*, 398 F.3d 700, 705 (5th Cir. 2005).

Plaintiff is the party against whom the collateral estoppel defense is being asserted. (*See* doc. 7 at 6.) Because he is a party to both actions, this defense may bar his present claims if the essential elements are satisfied. *See Rabo Agrifinance*, 583 F.3d at 353. Plaintiff's claims in this lawsuit are

based on alleged acts or omissions of the RPD in failing to investigate or intervene in the alleged conduct by federal and state government departments as well as private corporations, that was the subject of the prior lawsuit.  (doc. 3 at 3-10.)  He appears to allege that he discovered the RPD's alleged acts or omissions on October 18, 2017, when he received the information as a result of his open records request.  (*Id*.)  His claims against RPD were not asserted or "actually litigated in that action," nor could they have been because they were apparently discovered after Plaintiff filed the prior lawsuit on April 7, 2017.  *Starrett*, 2018 WL 1399177, at *1.[8]  Consequently, the determination of these claims was not "a critical and necessary part" of the judgment.  Because the elements of collateral estoppel are not satisfied, this doctrine is inapplicable.[9]

## B.    42 U.S.C. § 1983

Defendant argues that Plaintiff's constitutional claims should be dismissed because there is no private right of action to force an investigation, and his suit is based on "the doctrines of *[r]espondeat [s]uperior* and related doctrines."  (doc. 7 at 2-4.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  It "afford[s] redress for violations of federal statutes, as well as of constitutional norms."  *Id*.  To state a claim, Plaintiff must allege facts

---

[8] The judgment in Plaintiff prior lawsuit can be judicially noticed because it is a matter of public record and its contents cannot reasonably be disputed.  *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (stating that it is proper for a court "to take judicial notice of matters of public record"); *Taylor v. Charter Medical Corp.*, 162 F.3d 827, 831 (5th Cir. 1998) (noting that the district court could take judicial notice of a judgment entered in a different case for the limited purpose of taking as true the action of the court in entering the judgment); *see also* Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when "it can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed").

[9] Defendant's motion only asserts collateral estoppel.  (doc. 7 at 6.)  The separate but linked preclusive doctrine of claim preclusion is therefore not considered.  *See GLF Const. Corp. v. LAN/STV*, 414 F.3d 553, 555 n.2 (5th Cir. 2005) (declining to address claim preclusion *sua sponte*).

that show (1) he has been deprived of a right secured by the Constitution and the laws of the United

States and (2) the deprivation occurred under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436

U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

Municipalities, including counties and cities, may be held liable under § 1983.  *Hampton Co.

Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008).  A municipality may be liable

under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her

constitutional rights.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978); *Jones v. City

of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Board

of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)).  It is well-settled that a municipality cannot

be liable under a theory of *respondeat superior*, however.  *Piotrowski v. City of Houston*, 237 F.3d

567, 578 (5th Cir. 2001) (citing cases).  Because Plaintiff expressly relies on *respondeat superior*

or related doctrines to assert liability against Defendant, (*see* doc. 3 at 2, 10, 18), he fails to state a

claim for municipal liability.  *See id.* (citing cases); *see Trammell v. Fruge*, 868 F.3d 332, 344 (5th

Cir. 2017) (citing *Monell*, 436 U.S. at 691–92) ("a municipality cannot be held liable for

constitutional violations committed by its employees or agents on a theory of vicarious liability").[10]

Moreover, "[u]nder the decisions of the Supreme Court and [the Fifth Circuit], municipal

liability under section 1983 requires proof of three elements: a policy maker; an official policy; and

a violation of constitutional rights whose 'moving force' is the policy or custom."  *Id.* (citing

---

[10] Plaintiff also asserts liability under the law of agency and the doctrine of command responsibility.  A
municipality is not subject to liability under agency law as it is a theory of vicarious liability.  *see Johnson v.
GlobalSantaFe Offshore Servs., Inc.*, 799 F.3D 317, 321 (5th Cir. 2016) (recognizing that agency law imposes vicarious
liability); *Santacruz v. Hertz Equipment*, No. 3:12-CV-348, 2015 WL 2340330, at *2 (S.D. Tex. Apr. 27, 2015)
("vicarious liability is an issue of agency [law]").  The command responsibility doctrine is also inapplicable because it
is used to hold "'a commander liable for acts of his subordinates."  *Mamani v. Berzain*, 21 F. Supp. 3d 1353, 1375–76
(S.D. Fla. 2014) (quoting *Ford v. Garcia*, 289 F.3d 1283, 1286 (11th Cir. 2002)).

*Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010);

*Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005); *Jones*, 2006 WL 522127, at *3 (citing

*Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532–33 (5th Cir. 1996)).

Here, Plaintiff alleges that despite his numerous reports describing alleged criminal

violations "involving government agencies and their employees," the RPD, under Defendant's

authority, has denied him "intervention, investigation, and due process of law" in violation of his

Fifth and Fourteenth Amendment rights, and these violations "have been and are being conducted

pursuant to one or more policy, practice, or custom that violates Amendments to the United States

Constitution . . . ." (doc. 3 at 9-10.) "Whether the legal basis of this claim is founded on the due

process or equal protection clause, there is no federal constitutional right to have someone

investigated or prosecuted for criminal wrongdoing," however. *Amir-Sharif v. Dist. Attorney's

Office*, No. 3:06-CV-2277-B, 2007 WL 530231, at *2 (N.D. Tex. Feb. 21, 2007) (citing cases); *see

Lewis v. Jindal*, 368 F. App'x 613, 614 (5th Cir. 2010) (stating that "private citizens do not have a

constitutional right to compel criminal prosecution"); *Estate of Huff v. Abilene Police Dept.*, No.

1:15-CV-001-P-BL, 2015 WL 5674886, at *5 (N.D. Tex. Sept. 24, 2015) (citing cases) (recognizing

that "'there is no constitutional right to have police investigate allegations a party feels should be

investigated.'"). Because his allegations rely on the RPD's alleged failure to investigate or intervene

based on his reports of criminal violations, he fails to state a violation of his constitutional rights.

Nor do his allegations implicate the equal protection clause because he does not allege that he was

treated differently from other similarly situated individuals. *Johnson v. Rodriguez*, 110 F.3d 299,

306 (5th Cir. 1997) ("a party who wishes to make out an Equal Protection claim must prove 'the

existence of purposeful discrimination' motivating the [governmental] action which caused the

complained-of injury."); *Edwards v. Berkebile*, No. 3:08-CV-0010-L, 2008 WL 3155138, at *3 (N.D. Tex. July 30, 2008) ("The crux of an equal protection claim is that the complaining person was treated differently from similarly situated individuals."). Accordingly, his claims for violations of the Fifth and Fourteenth Amendments of the United States Constitution under § 1983 should be dismissed for failure to state a claim.

## C.    42 U.S.C. § 14141

Defendant argues that Plaintiff's claim under 42 U.S.C. § 14141, now cited as 34 U.S.C. § 12601, fails because he is not the Attorney General. (doc. 7 at 3.)

A claim under § 12601, which allows a civil action to eliminate a pattern or practice of unconstitutional conduct by governmental entities and their employees, may only be brought by the Attorney General. *Chaney v. Races & Aces*, 590 F. App'x 327, 330 (5th Cir. 2014) (analyzing claim under § 14141). Cases addressing claims under the prior version of § 12601 have recognized that the statute does not create a private cause of action by private citizens. *See Rodgers v. City of Dallas*, No. 3:15-CV-01631-N, 2016 WL 9076232, at *2 n. 1 (N.D. Tex. Oct. 12, 2016); *Johnson v. Dodson*, No. 2:14-CV-00059-J, 2014 WL 4513380, at *4 (N.D. Tex. Sept. 12, 2014); *White v. City of Dallas*, No. 3:12-CV-2145-O, 2013 WL 821992, at *5–6 (N.D. Tex. Feb. 8, 2013), *adopted by*, 2013 WL 840503 (N.D. Tex. Mar. 6, 2013); *Knight v. City of Balch Springs*, No. 3:11-CV-1122-B-BH, 2011 WL 3519938, at *2 (N.D. Tex. July 25, 2011), *adopted by*, 2011 WL 3510877 (N.D. Tex. Aug. 10, 2011). Plaintiff's claims under § 12601 should be dismissed for failure to state a claim.

## D.    42 U.S.C. § 1988

Defendant asserts that Plaintiff "may not obtain attorney's fees" because he is a *pro se* party.

(doc. 7 at 6.)

Because Plaintiff is proceeding *pro se*, however, he may not recover attorney's fees.  *See Danial v. Daniels*, 162 F. App'x 288, 291 (5th Cir. 2006) ("Attorney's fees are not available to a non-attorney *pro se* litigant.") (citing *McLean v. Int'l Harvester Co.*, 902 F.2d 372, 373 (5th Cir. 1990)); *Vaksman v. C.I.R.*, 54 F. App'x 592 (5th Cir. 2002) ("As a *pro se* litigant, [the petitioner] is not entitled to attorney['s] fees because, quite simply, he did not actually 'pay' or 'incur' attorney['s] fees.").  In any event, he is not entitled to attorney's fees because has failed to plead any viable causes of action.  *See Everhart v. CitiMortgage, Inc.*, No. H-12-1338, 2013 WL 264436, at *10 (S.D. Tex. Jan. 22, 2013); *Avila v. Mortg. Elec. Registration Sys., Inc.*, No. 4:12-CV-830, 2012 WL 6055298, at *7 (S.D. Tex. Dec. 5, 2012).  Accordingly, Plaintiff is not entitled to attorney's fees under § 1988.

**E.    State Law Claims**

Defendant also moves to dismiss Plaintiff's state law claims.  (doc. 7 at 4-6.)  Plaintiff asserts that this Court has supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367.  (doc. 3 at 2.)

Under § 1367(a), federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  In essence, § 1367(a) grants the courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact."  *McKee v. Texas Star Salon, LLC*, No. 3:15-CV-1162-D, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations

16

omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1996).

When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3). This rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiffs right."). In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257. However, "no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims. His state law claims arise from the same "common nucleus of operative facts" as his federal claims, namely, the alleged acts or omissions of the RPD in failing to investigate or intervene in the alleged conduct by federal and state government departments and private corporations. (doc. 3 at 3-10.) Requiring Plaintiff to litigate his claims in state court would "necessarily require consideration by two distinct courts of the same operative fact[s]" and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. Given Plaintiff's failure to state a claim for relief against Defendant in federal court, or otherwise show that a genuine controversy exists between the parties, allowing him to file suit in state court would impose unnecessary expenses on the court system and the parties involved. *See McCall v. Peters*, No. CIV.A. 3:00–CV–2247–D, 2003 WL 21488211, at *12 (N.D. Tex. May 12,

17

2003), *aff'd*, 108 F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendent or supplemental jurisdiction, the court may consider factors such as the amount of time and resources spent adjudicating the case). Because all three factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims, the Court should exercise supplemental jurisdiction and review the claims on the merits.

### 1.   *Texas Constitutional Claims*

Defendant contends that Plaintiff's claims under the Texas Constitution should be dismissed because "there is no cause of action [for damages] to enforce the Texas State Constitution." (doc. 7 at 4.)

"Claims seeking damages in tort under the Texas Bill of Rights (Article I) are unavailing because 'tort damages are not recoverable for violations of the Texas Constitution.'" *Valadez v. United Indep. Sch. Dist.*, No. L-08-22, 2009 WL 37485, at *1 (S.D. Tex. Jan. 6, 2009) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 507 (5th Cir. 2001), *cert. denied*, 534 U.S. 951 (2001)); *see also City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (stating that there is no cause of action for damages against governmental entities for violations of the Texas Constitution). Accordingly, to the extent Plaintiff seeks damages for violations of the Texas Constitution, his claims should be dismissed. *See Valadez*, 2009 WL 37485, at *1 (dismissing claims for damages under the Texas Constitution).

### 2.   *Texas Tort Claims Act (TTCA)*

Defendant also moves to dismiss Plaintiff's claims for libel and defamation, negligence, and negligent employment practices under the TTCA, as well as his claim for negligent infliction of

18

emotional distress. (doc. 7 at 4-5.)[11]

The TTCA "provides a limited waiver of sovereign and governmental immunity for certain tort claims, 'allowing suits to be brought against governmental units only in certain, narrowly defined circumstances.'" *Dorward v. Ramirez*, No. 3:09-CV-0018-D, 2009 WL 2777880, at *13 (N.D. Tex. Aug. 28, 2009) (quoting *Tex. Dep't of Crim. J. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)). A city is a "governmental unit" under the TTCA. Tex. Civ. Prac. & Rem. Code Ann.. § 101.001(3)(B). This "waiver of immunity constitutes the 'only . . . avenue for common-law recovery against the government' on a tort theory." *Id.* (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008)).

### a.    Defamation and Libel[12]

Defendant argues that the TTCA does not waive immunity for libel and defamation. (doc. 7 at 4.)

The TTCA's limited waiver of sovereign and governmental immunity for certain tort claims expressly does not apply to claims "arising out of assault, battery, false imprisonment*, or any other intentional tort.*" Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (emphasis added); *see also Dorward*, 2009 WL 2777880, at *13 (citing *Tex. Dep't of Crim. J.*, 51 S.W.3d at 587); *Swiat v. City of Fort Worth*, No. 4:10-CV-354-A, 2011 WL 2559637, at *5 (N.D. Tex. June 28, 2011) (considering the scope of § 101.057(2)). Under Texas law, defamation, which includes libel, is an intentional tort. *Williams v. City of Irving, Tex.*, No. 3:15-CV-1701-L-BH, 2017 WL 3822115, at

---

[11] Defendant does not specifically move to dismiss Plaintiff's negligent infliction of emotional distress claim under the TTCA, but it is considered under this section because negligent infliction of emotional distress is a tort.

[12] Libel is a type of defamation that is written, as opposed to slander, which is spoken defamation. *See Reagan v. Guardian Life Ins. Co.*,166 S.W.2d 909, 912 (Tex. 1942). Because libel is a type of defamation, these claims are analyzed together.

*9 (N.D. Tex. July 14, 2017) (citing cases) ("defamation of character (slander and libel)" is an intentional tort). Accordingly, Defendant has immunity from Plaintiff's defamation and libel claims under the TTCA, and they should be dismissed for failure to state a claim. *Id.* (dismissing defamation claims under Rule 12(b)(6) because the TTCA's waiver of immunity does not extend to intentional torts).

### b.    Negligence

Defendant argues that "Plaintiff has not alleged proper [TTCA] notice and has not alleged an exception to sovereign immunity . . . even if timely and proper notice had been given and alleged." (doc. 7 at 5.) It also argues that "[r]ecords are not subject to suit under the [TTCA]." (*Id.*)

Before a plaintiff may bring a tort action permitted under the TTCA "against a governmental entity, he must give notice in accordance with the TTCA." *Flores v. Nueces Cty.*, No. C-09-080, 2010 WL 2557775, at *12 (S.D. Tex. June 22, 2010) (citing Tex. Civ. Prac. & Rem. Code § 101.101(a)). Under the TTCA, "[a] governmental unit is entitled to receive notice of a claim against it . . . not later than six months after the day that the incident giving rise to the claim occurred." Tex. Civ. Prac. & Rem. Code § 101.101(a). "The notice must reasonably describe: (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident." *Id.* at § 101.101(a)(1)–(3). "These notice provisions are akin to statutes of limitations, and lack of notice bars any action under the TTCA." *Reynolds v. Dallas Cty.*, No. 3:07-CV-00513-O ECF, 2009 WL 2591192, at *6 (N.D. Tex. Aug. 21, 2009) (citing *Smith v. City of Houston*, 960 S.W.2d 326, 328 (Tex. App.—Houston[14th Dist.] 1997, no pet.)); *see also Tex. Tech Univ. Health Scis. Ctr. v. Rickey Lucero*, 234 S.W.3d 158, 166 (Tex. App.—El Paso 2007, pet. denied) ("[A] plaintiff's suit is barred by sovereign immunity unless the plaintiff pleads and proves notice [under § 101.101].").

Based on Plaintiff's allegations, it appears the incidents giving rise to his claim occurred in November 2015, when his family member contacted the RPD and it allegedly "inaccurately logged" "incorrect and illegally maintained information." (doc. 3 at 4-5, 14.) Plaintiff does not allege that he provided notice to Defendant within six months, and although service of a complaint may constitute sufficient notice, Plaintiff's complaint was not served within six months of the incidents giving rise to his claim. *Reynolds*, 2009 WL 2591192, at *6 (stating that Plaintiff failed to allege, argue, or present evidence that he complied with the notice requirements); *Colquitt v. Brazoria Cty.*, 324 S.W.3d 539, 541 (Tex. 2010) (per curium) (stating that a lawsuit itself may constitute proper notice under the TTCA if it is "served on the governmental unit within six months of the incident and contain[s] all the requisite information.").[13]   Nothing in Plaintiff's complaint suggests that Defendant had actual notice of Plaintiff's alleged injury such that the exception to the notice requirement would apply. *See Reynolds*, 2009 WL 2591192, at *6; *see also* Tex. Civ. Prac. & Rem. Code § 101.101(c) ("The notice requirements . . . do not apply if the governmental unit has actual notice that . . . the claimant has received some injury . . . .").[14]   Accordingly, Plaintiff's negligence claim should be dismissed for failure to provide sufficient notice. *See Rojero v. El Paso Cty.*, 226 F. Supp. 3d 768, 776 (W.D. Tex. 2016) (dismissing the plaintiff's negligence claim where is complaint was "bereft of any allegation that purportedly gave notice . . . within the statutory-six-

---

[13] Notably, the discovery rule does not apply to extend the TTCA's notice requirements. *See Timmons v. Univ. Med. Ctr.*, 331 S.W.3d 840, 848 (Tex. App.—Amarillo 2011, no pet.) (citing cases).

[14] "The Texas Supreme Court has held that actual notice to a governmental unit requires knowledge of '(1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved.'" *Mack v. City of Abilene*, 461 F.3d 547, 557 (5th Cir. 2006) (quoting *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995)). Plaintiff "has not alleged that [Defendant] had these three pieces of information." *Id.* (citing *Dallas–Fort Worth Int'l Airport Bd. v. Ryan*, 52 S.W.3d 426, 429 (Tex. App.—Fort Worth 2001, no pet.)).

month window"); *Reynolds*, 2009 WL 2591192, at *6 (dismissing the plaintiff's state law claims

under Rule 12(b)(6) for failure to provide sufficient notice under the TTCA); *but see Hart v. Dallas

Cty.*, No. 10-CV-1447-F, 2011 WL 13234290, at *6 (N.D. Tex. Aug. 12, 2011) (declining to dismiss

claims under the TTCA even though the notice alleged in the complaint "certainly border[ed] on

being inadequate").

      Even if Plaintiff had provided sufficient notice, his allegations fail to allege an exception to

governmental immunity. (*See* doc. 3 at 14-15.)  The TTCA waives governmental immunity in three

general areas: "use of publicly owned vehicles, premises defects, and injuries arising from

conditions or use of property." *Brown v. Montgomery Cty. Hosp. Dist.*, 905 S.W.2d 481, 484 (Tex.

App.—Beaumont 1995, no writ); *see also* Tex. Civ. Prac. & Rem. Code § 101.021.  Information

contained in records is not tangible property that can support a waiver of sovereign immunity under

section 101.021, however. *Campbell v. City of San Antonio*, 43 F.3d 973, 978–79 (5th Cir. 1995)

(citing *Univ. of Texas Medical Branch at Galveston v. York*, 871 S.W.2d 175, 179 (Tex. 1994)).

      Here, Plaintiff's negligence claim is based on the allegedly false information contained in

the RPD's records. (doc. 3 at 14.)  His complaint alleges that the RPD, under Defendant's authority,

"negligently created, maintains, and has acted upon records containing baseless, unsubstantiated,

factually incorrect, and colloquially offensive characterizations describing health as a primary factor

for Plaintiff's earliest reports when there is no history of symptoms or record of diagnosis . . . ."

(*Id.*)  He asserts that "[t]hese false characterizations relating to any health diagnosis where there are

none . . . portray an inaccurate context that motivates [Defendant's] employees, agents, and other

civilian authorities to ignore each of Plaintiff's updates and reports." (*Id.*)  Because his claim is

based on information contained in records, which does not constitute tangible property, Defendant's

immunity has not been waived, and Plaintiff's negligence claim is also subject to dismissal on this basis. *See Campbell*, 43 F.3d at 978–79 (finding that the plaintiff's claim for negligent use of information in identification materials did not constitute a violation under the TTCA); *Thompson v. Watson*, No. 3:98-CV-0289-P, 1999 WL 184115, at *6–7 (N.D. Tex. Mar. 24, 1999) (granting summary judgment in the defendant's favor because the plaintiff failed to allege a violation of the TTCA where his claims were based on misuse of information contained in Texas State Driver's License Records); *see also Jefferson Cty. v. Sterk*, 830 S.W.2d 260 at 262–63 (Tex. App.—Beaumont 1992, writ denied) (determining that an arrest warrant was not personal property to support an action under the TTCA).

### c.    Negligent Employment Practices[15]

Defendant argues that "there is no liability for negligence in the hiring process under the [TTCA]." (doc. 7 at 5.)

As noted, the TTCA's limited waiver of immunity allows "'suits to be brought against governmental units only in certain, narrowly defined circumstances.'" *Dorward*, 2009 WL 2777880, at *13 (quoting *Miller*, 51 S.W.3d at 587). Negligent hiring, training, supervision, and retention claims "are areas of liability that have not been waived by the TTCA." *Rivera v. City of San Antonio*, No. SA-06-CA-235-XR, 2006 WL 3340908, at *15 (W.D. Tex. Nov. 15, 2006); *Univ. of Tex. Health Sci. Ctr. v. Schroeder*, 190 S.W.3d 102, 106 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("allegations of negligent supervision do not satisfy the limited waiver of immunity contained within the act."); *Campos v. Nueces Cty.*, 162 S.W.3d 778, 787–88 (Tex. App.—Corpus Christi 2005, no pet.) (stating that claims for negligent hiring, training, and supervision cannot be brought

---

[15] Plaintiff specifically alleges negligent hiring, training, supervision, and retention. (doc. 3 at 15.)

under the TTCA); *see also Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580–81 (Tex. 2001) (claims such as negligent training and failure to discipline "involve the misuse or non-use of information and are thus barred by sovereign immunity.").  Accordingly, Defendant has immunity from Plaintiff's claims for negligent employment practices, and these claims should be dismissed. *Rivera*, 2006 WL 3340908, at *15 (dismissing negligent hiring and negligent training claims under Rule 12(b)(6) based on the TTCA).

### d.    Negligent Infliction of Emotional Distress

Defendant also moves to dismiss Plaintiff's claim for negligent infliction of emotional distress for failure to state a claim.  (doc. 7 at 5.)[16]

Texas law does not recognize a claim for negligent infliction of emotional distress.  *See Hagen v. Hagen*, 282 S.W.3d 899, 910 (Tex. 2009) (noting that negligent infliction of emotional distress "is not a valid claim"); *see also Martin v. Grehn*, 546 F. App'x 415, 421 (5th Cir. 2013) (stating that the tort of negligent infliction of emotional distress "does not exist in Texas").[17] Because Texas law does not recognize this claim, it should be dismissed for failure to state a claim upon which relief can be granted.  *See Phillips v. United Parcel Service*, No. 3:10-CV-1197-G-BH, 2011 WL 2680725, at *15 (dismissing negligent infliction of emotional distress claim under Rule 12(b)(6)).

---

[16] Defendant argues Plaintiff's claim for negligent infliction of emotional distress fails to meet the requirements of Rule 11.  (doc. 7 at 5.)  Because Defendant makes this argument in its failure to state a claim section and presents no argument regarding Rule 11, (*see id.*), this claim is considered under Rule 12(b)(6).

[17] Notably, a claim for negligent infliction of emotional distress is also not recognized under federal law. *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 172 (5th Cir. 1985); *accord Flores v. City of Palacios*, 381 F.3d 391, 401 n.8 (5th Cir. 2004) (recognizing that "the Constitution does not provide an independent right to be free from emotional distress"); *Shinn ex. rel. Shinn v. College Station Indep. Sch. Dist.*, 96 F.3d 783, 786 (5th Cir. 1996) (recognizing that "there is no constitutional right to be free from emotional distress.").

### 3.    *Texas Declaratory Judgments Act (the Act)*

Defendant argues that Plaintiff's request for declaratory judgment for violations of the Texas Constitution "fails because it attempts to mandate the exercise of discretion in a manner the Plaintiff approves of and the Defendant is otherwise immune." (doc. 7 at 5.)[18]

Although claims for damages are not permitted under the Texas Constitution, "equitable remedies for violation[s] of constitutional rights may be enforced." *McPeters v. LexisNexis*, 910 F. Supp. 2d 981, 990 (S.D. Tex. Oct. 3, 2012) (citing *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995)). Under the Act, "[a] person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the . . . statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a). "[S]uits to require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity . . . ." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Governmental entities, however, "remain immune from suit" under the Act. *Id*. at 372–73. "[I]t follows that these suits cannot be brought against the state, which retains immunity, but must be brought against state actors in their official capacity." *Id*. at 373; *see Tex. Transp. Comm'n v. City of Jersey Village*, 478 S.W.3d 869, 883 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citing cases) ("sovereign immunity bars declaratory-judgment claims against the governmental entities, as opposed to the governmental actors.").

Here, Plaintiff's suit is only against a governmental entity, namely, the City of Richardson.

---

[18] It appears Defendant's argument relates only to Plaintiff's state law request for a declaratory judgment. (doc. 7 at 5-6 & n.6.)

(doc. 3 at 1, 3.)  He seeks a declaratory judgment that the RPD, acting under Defendant's authority, "should have and must investigate crimes as reported by Plaintiff, consistent with the . . . Texas Constitution Article 1. Bill of Rights."  (*Id*. at 17.)  He also seeks a declaration that his "rights were deprived and violated as guaranteed in . . . the Texas Constitution by Defendant . . . ."  (*Id*.)  Because his suit is against a governmental entity, which retains immunity from suit under the Act, his claim should be dismissed on this basis for failure to state a claim.  *Stem v. Gomez*, 813 F.3d 205, 215 (5th Cir. 2016) (affirming dismissal of claims under the Act because "sovereign immunity insulate[d] the city from the lawsuit"); *Garza v. Gulf Bend Center*, No. V-15-006, 2016 WL 590153, at *3 (S.D. Tex. Feb. 15, 2016) (dismissing claims for declaratory relief against non-profit governmental entities on the basis of governmental immunity for failure to state a claim under Rule 12(b)(6)).

## IV. SUA SPONTE DISMISSAL

Plaintiff also asserts claims under 42 U.S.C. § 1985, and appears to seek declaratory and injunctive relief under federal law as well as injunctive relief under state law.  (doc. 3 at 2, 9, 17-18.)  Defendant does not appear to move to dismiss these claims.  (*See* doc. 7.)

A court may *sua sponte* dismiss a plaintiff's claims on its own motion under Rule 12(b)(6) for failure to state a claim as long as the plaintiff has notice of the Court's intention and an opportunity respond.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)).  "The fourteen-day time frame for filing objections to a recommended dismissal provides Plaintiff with notice and an opportunity to respond."  *Fantroy v. First Fin. Bank, N.A.*, No. 3:12-CV-0082-N (BH), 2012 WL 6764551, at *7 (N.D. Tex. Dec. 10, 2012), *adopted by*, 2013 WL 55669 (N.D. Tex. Jan. 4, 2013) (citing *Ratcliff v. Coker*, No. 9:08-CV-127, 2008 WL 4500321, at *3 n.1 (E.D. Tex. Sept. 26, 2008)).

26

A.    <u>42 U.S.C. 1985</u>

Plaintiff asserts that he brings this action, in part, pursuant to 42 U.S.C. § 1985 for violations

of his constitutional rights.  (*See* doc. 3 at 2, 9.)  Section 1985 "creates a private civil remedy for

three prohibited forms of conspiracy to interfere with civil rights under that section." *Montoya v.*

*FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010). Plaintiff does not specify

which subsection upon he relies to assert his claims under section 1985.  (*See* doc. 3.)  Regardless

of which subsection Plaintiff relies upon, the law presumes that municipalities are incapable of

entering into conspiracies.  *See Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998);

*Hiliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994).  Defendant therefore cannot be liable under

§ 1985.  *See Mitchell v. City of Sugar Land*, No. G–10–223, 2011 WL 1156253, at *8 (S.D. Tex.

Mar. 25, 2011); *see also Batiste v. City of Beaumont*, 421 F. Supp. 2d 969, 986 (E.D. Tex. 2005).

Plaintiff's claims under § 1985 should be *sua sponte* dismissed for failure to state a claim.

B.    <u>Federal Declaratory and Injunctive Relief</u>

Plaintiff also appears to seek declaratory and injunctive relief under federal law. (doc. 3 at

17.)  Because Plaintiff's substantive claims under federal law are subject to dismissal for failure to

state a claim, his requests for equitable relief, to the extent asserted under federal law, should be *sua*

*sponte* dismissed for failure to state a claim.  *See Jackson v. Fed. Home Loan Mortg. Corp.*, No.

4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) ("To obtain injunctive relief,

[a] plaintiff is required to plead and prove, inter alia, 'a substantial likelihood of success on the

merits.'") (quoting *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996));

*Turner v. AmericaHomeKey Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *6 (N.D. Tex. Aug.

16, 2011) (dismissing the plaintiff's request for declaratory judgment where he pleaded no viable

claim for relief).

**C.    State Injunctive Relief**

Plaintiff also appears to request preliminary and permanent injunctive relief under state law. (doc. 3 at 17.)  Plaintiff's requests for injunctive relief, to the extent asserted under state law, appear to relate only to his claim that Defendant violated Article 1, Section 30 of the Texas Constitution (doc. 3 at 12, 17.)

As noted, claims for equitable relief are available for violations of the Texas Constitution. *McPeters*, 910 F. Supp. 2d at 990 (citing *Bouillion*, 896 S.W.2d at 149).  Section 30 of Article 1 "provides crime victims the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process and the right to be reasonably protected from the accused throughout the criminal justice process." *Herrera v. State*, 24 S.W.3d 844, 845–46 (Tex. App.—El Paso 2000, no pet.); *see* Tex. Const. art. I, § 30(a).

*1.    Preliminary Injunction*

In order to be entitled to a preliminary injunction under Texas law, "the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Health Care Serv. Corp. v. East Tex. Med. Center*, 495 S.W.3d 333, 337 (Tex. App.—Tyler 2016, no pet.) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)).

Here, Plaintiff alleges that the RPD, acting under Defendant's authority, created and maintains records containing incorrect and offensive information about his health in violation of the Texas Constitution, and requests injunctive relief to prohibit the availability of such information and to force the RPD to correct or update it.  (doc. 3 at 12, 17.)  His conclusory and speculative

allegations do not show how these alleged actions create a cause of action against Defendant for violation of Section 30. His speculative belief that these records motivate employees to ignore his crime reports do not show the existence of imminent or irreparable injury, and are insufficient to "raise [his] right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, his claim for preliminary injunctive relief, to the extent asserted under the Texas Constitution, should be *sua sponte* dismissed for failure to state a claim.

### 2.    *Permanent Injunction*

"To obtain permanent-injunctive relief [under Texas law], a party must show (1) the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law." *Livingston v. Livingston*, 537 S.W.3d 578, 587 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Risner v. Harris Cty. Republican Party*, 444 S.W.3d 327, 339 (Tex. App.—Houston [1st Dist.] 2014, no pet.)). "When determining the appropriateness of a permanent injunction, a court should balance the competing equities, including the public interest." *Id*. (internal quotations omitted). Plaintiff's request for permanent injunctive relief fails for similar reasons as his request for preliminary injunctive relief: his conclusory and speculative allegations fail to show the existence of a wrongful act or the existence of imminent harm or irreparable injury. Accordingly, his claim for permanent injunctive relief, to the extent asserted under the Texas Constitution, should also be *sua sponte* dismissed for failure to state a claim.

### V. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v.*

*Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*,

No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically

allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a

court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D,

2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff

may also obtain leave to amend his complaint in response to a recommended dismissal. *See

Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex.

Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1. However, "[w]hen a plaintiff is given an opportunity

to amend a complaint that fails to state a claim upon which relief can be granted, but refuses to do

so, then the district court is justified in dismissing the complaint with prejudice." *Rodriguez v. U.S.*,

66 F.3d 95, 98 (5th Cir. 1995). Additionally, a court may appropriately dismiss an action with

prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her

best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has not amended his complaint since filing this action. It does not appear that

he could successfully state a claim for relief even if provided an opportunity to amend, however.

His claims under § 1983 are based on *respondeat superior* and actions that do not constitute

constitutional violations, and his state law claims are either unrecognized or barred by immunity.

Additionally, to the extent he seeks injunctive relief under state law, it does not appear that he can

successfully state a claim for such relief. Any further opportunity to amend is therefore

unwarranted.

## VI. RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED**, and Plaintiff's claims should be

**DISMISSED with prejudice**.  Plaintiff's claims under 42 U.S.C. § 1985, as well as any remaining federal and/or state law claims for declaratory and injunctive relief should be *sua sponte* **DISMISSED with prejudice** for failure to state a claim.

        **SO RECOMMENDED** on this 27th day of July, 2018.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

        A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

31